**SWARTZ, Plaintiff-Appellant, v. CARMEN, Defendant-Appellee.**

Ohio Appeals, Tenth District, Franklin County.

No. 6113. Decided December 8, 1959.

Richard B. Metcalf, Max Robins, Columbus, for plaintiff-appellant.
Robert A. Bell, Columbus, for defendant-appellee.

## OPINION

By BRYANT, PJ.

This matter comes before this court upon an appeal on questions of law and fact. In this court Joe Swartz, plaintiff-appellant, filed an amended petition naming as defendants-appellees, Harris Carmen, Rose Koshel and Newton A. Thatcher, treasurer of Franklin County, Ohio.

The amended petition prays for judgment upon two notes executed by Carmen in favor of Swartz on May 14, 1953, one in the amount of $4,148.30 and the other for $4,000, the foreclosure of mortgages upon two separate parcels of real estate given to secure the notes, sale of the property in question and application of the proceedings upon the judgment.

In the court below, the petition prayed for judgment upon only a single note and mortgage and foreclosure of the latter. On behalf of Swartz it was contended that only one note and mortgage were in

default when the proceeding was begun but that since that time the second note and mortgage have matured.

In this court and in the court below, Carmen filed an answer and a cross-petition containing a general denial, alleging accord and satisfaction and further alleging that Swartz had promised that all checks and notes signed by Carmen, payable to Swartz, and in Swartz's hands would be cancelled. The cross-petition asked for an order of the court requiring surrender and cancellation.

The other defendants filed general denials and Swartz filed an answer to the cross-petition admitting that Swartz held certain notes executed by Carmen and payable to Swartz, containing also a general denial and asking for the dismissal of the cross-petition.

From the testimony in the case it appears that Carmen had been engaged in carpenter work and building residences, that he married Swartz's daughter, that a son was born to Mr. and Mrs. Carmen and that Swartz gave considerable financial backing to Carmen, taking as security checks, notes and real estate mortgages executed by Carmen.

Thereafter, Mrs. Carmen died and it appears that in the months which followed, the relationship between Swartz and Carmen deteriorated rapidly. It appears that in the closing months of 1954 Swartz made repeated demands on Carmen to pay up and terminate the financial arrangements which had existed between them.

Carmen claimed that the pressure upon him was so intense that it actually made him ill. The financial relations between Swartz and Carmen are not at all clear in the record in this case and can best be described as a tangled web.

Carmen appealed for financial help to his two sisters, Mrs. Koshel living in New York, and Mrs. Sarah Rein of Fontana, California. The latter came to his rescue.

It appears that the initial offer of Mrs. Rein to settle Carmen's obligation to Swartz was communicated through a local real estate man but nothing came of this first offer. However, a few days after, on December 30, 1954, a written offer made by Mrs. Rein having attached a detailed acceptance thereof was signed by Swartz. The offer by Mrs. Rein recited the fact that Swartz had a claim "against her brother and that Swartz was pressing him for settlement, which he says he cannot do." The agreement as entered into involved the payment to Swartz of a total of approximately $3,262.50 and, according to Carmen, completely settled debts several times that amount represented by checks, notes and mortgages signed by Carmen.

Included in the considerations in favor of Swartz were Mrs. Rein's certified check in the amount of $2,612.50 payable to Swartz; $150 cash paid by Mrs. Rein to Swartz; conveyance of the title of a compressor from Carmen to Swartz valued at $250 and the payment of $250 by Mrs. Rein for the future education of the son of Carmen, who is of course the grandson of Swartz.

All of the things in the settlement agreement required to be done either by Mrs Rein or Carmen under the settlement agreement were done at the appointed time. Carmen relies upon the language of the

agreement which he says required Swartz within thirty days to surrender and cancel all checks, notes and mortgages executed by Carmen in favor of Swartz.

On behalf of Swartz it is alleged that Swartz's bookkeeper maintained separate accounts for the financial dealings between Swartz and Carmen with a separate page for each of the two mortgages and another account known as the accommodation account. It is the claim on behalf of Swartz that the accord and satisfaction applied only to the accommodation account and not to the notes secured by real estate mortgages.

The settlement agreement, identified as defendant's Exhibit No. 1, reads as follows:

"December 27, 1954

"Mr. Joe Swartz

"819 E. Jenkins Avenue

"Columbus, Ohio

"Dear Sir:

"I understand you have a claim against my brother Harris Carmen and that you are pressing him for settlement, which he says he cannot do. Harris states that he left a compressor with you of $250.00 value, which against his expressed word you allowed another to possess.

"I am trying to help Harris and his son Ronald who is your grandson. In consideration of the sacrifice, I am making in their behalf, if you will make a sacrifice in Ronald's behalf by helping his father, Harris H. Carmen, I am personally (thru this messenger) willing to tender you $2,612.50 check plus $150.00 cash to liquidate his debts to you. Since my last offer, I am given to understand that none of your claims are free from legal attack.

"Also to show my good faith, shortly after your acceptance, I will present Ronald with $250.00 for his future education. Of course you are free to present your claims in court, if you do not wish this settlement.

"I am authorized by Harris that title to the compressor shall pass to you on your signing below, which is part of my offer.

"Sincerely yours,

/s/ "Sarah Rein

"In consideration of the above and of certified check no 1198 Bank of America, Fontana, Cal., dated 12/21/54 and $150.00 cash, receipt of both check and money, I evidence by signing. I Joe Swartz of the city of Columbus and State of Ohio promise the visible cancellation and surrender to Harris Carmen within 30 days (of my signing) of Harris Carmen's notes and uncashed checks, all, originally payable to Joe Swartz, I certify that none of the instruments or encumbrances have been, are or will be, disposed of (Except to H. C.), transferred or assigned. I agree to the provisions and will be responsible, for which I pledge my bond and indebtedness.

"Signed

"Joe Swartz

"Dated 12/30/1954

"Witness W. B. Kreinbill

"Witness William A. Johnson"

In the court below, the trial judge held that defendant's Exhibit No. 1 was all inclusive and that as written it applied to and settled all checks, notes and mortgages signed by Carmen and payable to Swartz. The trial court said in part as follows:

"THE COURT: Now, you want your cake and you want to eat it too. I am trying to reduce this to the simpliest possible language. Mr. Swartz had a right if he so desired to return this money and directly to challenge Exhibit No. 1, but so long as he keeps this money which he claims is his he is bound by all the conditions under which it was tendered. Now, that surely is elementary law.

"Under the case of Perry v. O'Neill he could have brought a suit directly to challenge this settlement agreement, but he hasn't done so.

"I am willing to give full credence to all the testimony that you have offered to the effect that Mr. Swartz intended to settle only one account, but that is not the legal effect of the document. Mr. Swartz had had legal advice on the note and mortgage. He was free to get legal advice with reference to this. I honestly don't know whether Mr. Swartz reads or doesn't read, but there can be no question about it, this document was read three times aloud. There is no dispute on that. There was no fraud, no duress, no pressure, nothing, but he took the consideration. He keeps it to this day. Now, if he is going to keep the consideration he is bound by its provisions.

"Now then on the face of this rather inarticulately drawn instrument they speak of encumbrances, 'I certify that none of the instruments or encumbrances have been, are, or will be, disposed of, * * *' "

In the case of **Leavitt and Loe, Executors of Last Will and Testament of Hans Wilson, Deceased, v. David Morrow, 6 Oh St 71**, the syllabus reads as follows:

"An accord and satisfaction, moving from a stranger or person having no pecuniary interest in the subject-matter, if accepted in discharge of the debt, constitutes a good defense to an action to enforce the liability against the debtor."

In **1 O. Jur. (2d), 146, Accord and Satisfaction, §6,** it is said:

"The modern and better rule, which is followed in Ohio, is that an accord and satisfaction made with one who is a stranger to the transaction to which it relates is good, and will bar an action on the claim involved, if the person against whom the claim was made has either authorized or ratified the settlement. The fact that the debtor sets up the accord and satisfaction as a defense is sufficient to show his consent to the settlement."

We find ourselves reaching conclusions similar to those reached by the trial court, who pointed out that different issues would arise if Swartz turned back the consideration he received and brought an action to rescind or reform the agreement identified as defendant's Exhibit No. 1. No such action was brought and the only thing pending was the agreement itself interposed as a defense to the mortgage foreclosure action. We are unable to find patent or latent ambiguities in the settlement agreement and no one claims that there was either fraud or duress.

In this case the language used in the agreement need not be interpreted but merely given the everyday meaning attached to the words

used. When that is done we can only conclude that the trial court was right in holding that defendant's Exhibit No. 1 served as a complete bar to the mortgage foreclosure actions and further that plaintiff-appellant was under a duty to surrender all checks, notes and mortgages executed by Carmen in favor of Swartz and that the order directing cancellation on the record of the two mortgages was proper. Our holding therefore is similar to that of the court below and an appropriate entry may be drawn.

DUFFY, J, concurs.
MILLER, J, not participating.